CHIEF JUSTICE TURNAGE
respectfully dissents.
The majority opinion correctly states that this Court’s function is to determine the legislature’s intent in the passage of a statute. The majority then goes on to say that based on the plain language of the statute Retired Justice L. C. Gulbrandson is not entitled to the benefits of § 19-5-502, MCA, as amended by Chapter 664 of the 1989 Montana Session Laws.
Resorting to this method of judicial analysis ignores a long history of § 19-5-502, MCA, and Chapter 664 of the Session Laws of 1989. This Court’s resorting to the “plain language” analysis affords an easy solution to the issue before this Court, neat, plausible and wrong.
To arrive at a just and correct solution of the issue before this Court it is absolutely necessary to fully understand the history and political maneuvering that underlies the 1989 amendment to § 19-5-502, MCA. Failure to do so can only result in a denial of justice and fairness in this case.
For several years, the Montana Judges’ Retirement System had been the focus of certain actuarial consultants and personnel of the Montana Public Employees’ Retirement System who consistently proclaimed that the Judges’ Retirement System was under-funded. I respectfully submit that the following factual information set forth herein clearly establishes that for more than ten years last past and presently, the System is not under-funded. The following information obtained from the records of the Public Employees’ Retirement Board are most interesting and factually important.
STATE OF MONTANA JUDGES’ RETIREMENT SYSTEM ADDITIONS TO NET ASSETS AVAILABLE FOR BENEFITS
FISCAL YEAR REVENUES EXPENSES ANNUAL ADDITIONS NET ASSETS AVAILABLE
06/30/85 1,486,109 420,788 1,065,321 6,614,467
06/30/86 1,606,206 451,163 1,155,043 7,769,510
06/30/87 1,678,660 442,168 1,236,492 9,006,002
06/30/88 1,653,856 453,033 1,200,823 10,206,825
06/30/89 1,829,743 465,282 1,364,461 11,571,286
06/30/90 1,984,100 613,484 1,370,616 12,941,902
06/30/91 2,065,536 580,088 1,485,448 14,427,350
06/30/92 2,169,853 667,957 1,501,896 15,929,246
06/30/93 2,409,254 802,217 1,607,037 17,536,284
06/30/94 2,552,411 749,672 1,802,739 19,339,023
*507 It is important to note that actuarial consultants have indulged certain assumptions that are not supported by logic or the facts or the actuary has failed to take into consideration certain other relevant and very important facts concerning judges’ retirement. For example:
(1) Assumption that the rates of salary increase for judges are based upon an assumed compounded growth rate of 6.5 percent per annum. If such were the case, Montana judges certainly would not be the lowest paid judges in the nation. If the actuary was correct, Montana district judges commencing January 1, 1995, would be receiving a salary of $98,309 annually, or $35,131 more than they are actually receiving.
(2) Another actuarial assumption is that the obligation of the pension reserves must be adjusted to present value which, of course, assumes that every judge will retire tomorrow and there never will be any further contributions made to the system from all of the present revenue sources and that all of the present value obligations would have to be paid out on the same date. This assumption, although with due respect may be a standard actuarial approach, simply defies logic for the reason that it cannot and will not ever occur.
(3) A relevant fact that should be considered by the actuary in making assumptions is the fact that judges are not entitled to draw normal retirement until they have reached the age of sixty-five years. This requirement does not apply to any other public employee system in the State of Montana. The result of such requirement is, of course, that judges, when they do commence to draw retirement, are at a relatively advanced age and based on the mortality tables cannot expect to draw their retirement for any extended number of years. A review of the retirement board records relating to deceased judges will most certainly bear out this fact of life.
(4) It does not appear that the actuary has taken into account that many of the present judges are entering the system at a much earlier age and contributions will be made by them and the employer for an extended period of time that statistically did not take place in years past. These judges, of course, will also be required to wait before receiving any benefit from the system under normal retirement until they have reached the age of sixty-five years.
From the foregoing revenues and expenses from June 30,1985, to June 30,1994, it is readily apparent that revenues have been exceeding expenses by over three times annually and that the annual additions to and growth of the fund assets are exceeding well over *508 $1,000,000 in each of those ten years. The net assets of the Judges’ Retirement System will, of course, continue to grow at the experienced rate or in excess thereof. With prudent investment of the funds, this system will be in a position to loan money to the United States of America to bail out its Social Security System in a few more years.
What does this history of the System’s revenues and expenses have to do with the issue in this case? Everything.
This inquiry leads us to the history of what is now § 19-5-502, MCA, as amended by Chapter 664 of the Montana Sessions Laws of 1989. Prior to the 1987 session of the Montana legislature, it was apparent that there was an unfairness in the Judges’ Retirement System. What is now § 19-5-502, MCA, from the inception of the System, penalized judges who had served fifteen years by reducing their retirement benefits to 1 percent credit for each year of service after fifteen years. This reduction was far below the annual service credit for the first fifteen years of service and was nearly twice lower than the annual service credit of public employees in the state. In an attempt to bring some equity into this situation, there was introduced Senate Bill 365 in the 1987 session which would have raised the 1 percent annual credit after fifteen years to 2 percent. Senate Bill 365 was heard in the Senate and House Committees. During the hearings, it was evident that personnel of the Public Employees’ Retirement System succeeded in alarming the committee members that the Judges’ Retirement System was in great jeopardy and under-funded. Please note, for each of the fiscal years ending June 30, 1986, and June 30,1987, the net assets of the funds had increased by well over $1,000,000 for each of those years. The net result was that the House of Representatives failed to approve the Bill and the Bill died, notwithstanding the fact that the Bill carried with it a funding mechanism to increase contributions to the Judges’ Retirement System over and above any anticipated additional expenses by virtue of the increased service credit.
It was apparent during the 1987 legislative hearings that certain members of the legislature were of a mind that any legislation that benefited judges was not going to meet with their approval. Unfortunately, this carried over into the 1989 session.
During the 1989 session, Senate Bill 241 was introduced and is now Chapter 664 of the 1989 Montana Session Laws. It amended § 19-5-502, MCA, into its present form.
Senate Bill 241 contained a funding provision which more than exceeded any cost to the system by raising the service retirement *509 credit from 1 percent to 2 percent. In spite of the written testimony of the Public Employees’ Retirement Division Administrator that the Board did not oppose Senate Bill 241 and that it did provide a method of funding that more than off-set any of its costs, the Division persisted in claiming that the Judges’ Retirement System was underfunded in spite of the fact that for the fiscal year June 30, 1988, the additions to the retirement assets increased by well over $1,000,000 and on June 30, 1989, the assets increased by $1,364,461.
The House Committee on State Administration held hearings on the Bill and again, in spite of the system not opposing the Bill, a representative of the Public Employees’ Retirement Division went into great length in again raising fears of under-funding of the judges’ retirement system. It was apparent that the usual opponents to any legislation that would benefit the judiciary was again arguing that the Judges’ Retirement System was under-funded and the Committee initially refused to approve the Bill on a tie vote and the Bill was tabled. Thereafter, political maneuvering obviously took place and the Bill was taken off of the table, amended and passed with the increased annual service credit benefit reduced from 2 percent to 1.785 percent, the same as other public employees of the State of Montana were receiving. The most significant amendment to Senate Bill 241, and which clearly evidences political maneuvering that would make Machiavelli blush, is found in what then appeared as section 5 of the Bill, and which section does not appear in our Montana Code Annotated, reads as follows:
Section 5. Review of actuarial valuation. The public employees retirement board shall provide to the 52nd legislature, by January 10, 1991, a copy of the most current actuarial valuation of the judges’ retirement system. The legislature shall review the actuarial soundness of the judges’ retirement system, and the 52nd legislature may eliminate or modify the effect of [this act].
The obvious purpose of the legislators who were not particularly supportive of the judiciary in offering this amendment certainly cannot be attributed to a factual fear of under-funding of the Judges’ Retirement System in view of the fact that the System had been growing with excess revenues over expenses at well over $1,000,000 per year for several years prior to the 1989 legislative session. It is apparent that the opponents of the Bill included this amendment for the purpose of having the Bill before them again in the 1991 legislative session when they could effectively repeal the 1989 increased service credit benefit. In any event, certain of the opponents to this *510 Bill did not return to the 1991 legislative session and there was no effort to repeal the increased service benefits.
The foregoing basic facts are all set forth in the appendix to plaintiff’s brief and are a part of the record in this case. Such facts support the observations of the undersigned.
With the foregoing in mind, it is obvious that the legislative intent behind what is now Chapter 664 of the Montana Session Laws of 1989 cannot be determined by simply looking at the bare wording of Senate Bill 241.
In this Court’s search for justice, it would be unwise to dispose of this case based on a plain language doctrine.
There is a further point that gives rise to the necessity of interpreting the legislative intent in this manner. If, as claimed by the majority, that section 3 of Chapter 664 is only to be effective on July 1, 1991, this raises a substantial question as to whether or not any portion of section 3 of the Act, which is the entirety of § 19-5-502, MCA, likewise is not to be effective until July 1, 1991. If such be the case, for a two-year period from July 1, 1989, to July 1, 1991, no member of the Judges’ Retirement System could receive any credit for those two years of service. Such “plain language” approach technically could lead to an absurd result that the majority would likely disavow.
It should be noted that major portions of Senate Bill 241 became effective July 1, 1989, particularly those portions that provided additional monies to the Judges’ Retirement System.
If the legislature clearly intended that no judge retiring prior to July 1,1991, would be entitled to any ofthe .785 percent service credit retirement, they simply could have stated in the amendment to § 19-5-502, MCA, the following: “No judge retiring prior to July 1, 1991, shall be entitled to the increased service credit of .785 percent per year for each year of service after fifteen years.” If such was their intent, they could have easily made that additional statement, thereby avoiding the underlying litigation and the necessity for this Court to interpret legislative intent.
It must also be noted that Retired Justice Gulbrandson is not seeking the increased service credit benefit from the effective date of the act, July 1, 1989, but only from the July 1, 1991, when the increased service credit became effective. Retired Justice Gulbrandson is the only retired person that could possibly be or has been affected by the July 1, 1991, effective date of the increased service credit. He is the only member of the Judges’ Retirement System with *511 more than fifteen years service credit that retired between July 1, 1989, and July 1, 1991. He is entitled, prospectively, to the benefit of the act increasing the service credit effective July 1, 1991. Denying him the benefit of Senate Bill 241 for an increased service credit commencing July 1,1991, which is what Retired Justice Gulbrandson is requesting, does not involve a retroactive request for benefits — only a prospective right to those benefits subsequent to July 1, 1991.
Denial of the prospective benefits subsequent to July 1, 1991, violates Retired Justice Gulbrandson’s rights secured under the Contracts Clause, Article I, Section 10, Clause 1, of the United States Constitution. On September 10, 1989, when Retired Justice Gulbrandson concluded his judicial career, Senate Bill 241 had been law since it was approved by the Governor on May 12, 1989. The basic effective date of the act had been law since July 1, 1989. Therefore, Retired Justice Gulbrandson had a constitutionally-protected contract right to rely upon the benefits that are due him under the act before he retired.
Retired Justice Gulbrandson has also been denied equal protection of the law as guaranteed under the Fourteenth Amendment to the United States Constitution, which classifies him in such a manner as to make the classification arbitrary and capricious. Even under the reduced rational basis test of equal protection, the State cannot demonstrate any legitimate rational purpose in denying the prospective benefits based upon the clear record of the assets of the Judges’ Retirement System.
Of the nearly one hundred past and present members of the Judges’ Retirement System, Retired Justice Gulbrandson is the only person that could possibly be affected by § 19-5-502, MCA. No other person retired between the approval date of the act, May 12,1989, and July 1,1991. The denial of benefits to Retired Justice Gulbrandson simply cannot set any precedent, affect any other person and like circumstances simply will never again reoccur.
Retired Justice Gulbrandson served the people of Montana with dedication, diligence and ability for twenty-three years as District Judge of the Seventh Judicial District and for six years and eight months as a Justice of the Montana Supreme Court — a total of twenty-nine years and eight months of judicial service.
During Justice Gulbrandson’s service as a District Judge in the Seventh Judicial District from January 4, 1960, to January 2, 1983, he was the only judge serving the District that comprised the Counties of Richland, Dawson, McCone and Wibaux. During much of that *512 time this judicial district was experiencing a judicial explosion because of an oil development boom that prevailed during nearly all of that period of time. It is ironic that after all of those years L. C. Gulbrandson provided judicial service to the Seventh Judicial District as the lone district judge thereof, the legislature in 1984, the year that Retired Justice Gulbrandson assumed his seat on the Montana Supreme Court, increased the number of judges in the Seventh Judicial District by adding an additional judge.
There is ample precedent that pension statutes should be liberally construed in favor of the persons intended to be benefited thereby and examined in their entirety to determine the legislative intent. Such laws must be construed equitably in the interest of the state and the employee and applied so as not to achieve an unreasonable result. 67 C.J.S. Officers § 243.
The Public Employees’ Retirement Board was arbitrary and wrong in denying Retired Justice L. C. Gulbrandson, prospectively, the service credit benefits after July 1, 1991.
The certified question cannot be simply answered by a “plain language” analysis. To do so, would result in a denial of justice.
I would answer the certified question of the United States District Court by stating that the benefit increase provided for in Chapter 664, Laws of 1989, an amendment to § 19-5-502, MCA, provides its benefit prospectively to Retired Justice L. C. Gulbrandson from July 1, 1991.
Answering the certified question in this manner is a fair, just and correct interpretation of legislative intent.
As judges, we should make no judgments where there is no fairness or compassion.
I wish to also note that the legislature subsequently amended § 19-5-502, MCA, by Section 103 of Chapter 265, Laws of 1993. This amendment, effective July 1, 1993, obviously repealed Section 3 of Chapter 664, Laws of 1989, by rewriting § 19-5-502, MCA. It now reads:
Service retirement benefit. Upon retirement from service, a member must receive a service retirement benefit equal to 3 1/3% per year of the member’s current salary for the first 15 years of credited service and 1.785% per year for each year of credited service after 15 years.
In so amending § 19-5-502, MCA, the legislature obviously has repealed the version that was enacted as Chapter 664, Laws of 1989. *513 Therefore, the effective dates contained in Chapter 664, Laws of 1989, relating to § 19-5-502, MCA, no longer apply.
The statute, as enacted in Chapter 265 Laws of 1993, by the plain language thereof, states that a member (retired district judge or justice) is entitled to a service retirement benefit of 1.785% per year for each year of credited service after fifteen years.
This includes Retired Justice Gulbrandson and other retired members of the system.
Even though I believe him to be entitled to the increased service credit from July 1,1991, in all events, Retired Justice L. C. Gulbrandson would be entitled to this benefit from July 1, 1993.
JUSTICE WEBER joins in the foregoing dissent.